# UNITED STATES DISTRICT COURT
### for the
### District of Minnesota

UNITED STATES OF AMERICA

v.                                           Case No. 16-MJ-951 JSM

JESSE WELLS HAUG

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about March 28, 2016, in Dakota County, in the State and District of Minnesota, defendant,

for the purpose of executing a scheme to defraud and to obtain money by means of false or fraudulent pretenses, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce an interstate wire communication; specifically, an e-mail communication from jesse@710services.com, an email account managed by Google, to Victim #1 at his Gmail account, attaching a false "Investment Breakdown" purporting to list Victim #1's real estate investments with HAUG,

in violation of Title 18, United States Code, Section 1343.

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:   ☒Yes   ☐ No

_____
*Complainant's signature*

Gina Palokangas, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/22/16

_____
*Judge's Signature*

Janie S. Mayeron, U.S. Magistrate Judge
*Printed Name and Title*

City and State: Minneapolis, MN


SCANNED
DEC 2 2 2016
U.S. DISTRICT COURT MPLS

16-MJ-951 JSM

STATE OF MINNESOTA   )
                         )   ss.   **AFFIDAVIT OF GINA M. PALOKANGAS**
COUNTY OF HENNEPIN  )

I, Gina M. Palokangas, being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 21 years. As a Special Agent, my duties and responsibilities have included conducting criminal investigations of individuals and business entities for possible violations of federal laws, particularly those laws found in Title 18, United States Code. Since January 2009, I have been assigned to the FBI's Minneapolis, Minnesota, field office, during which time I have been assigned to a White Collar Crime squad with responsibility for investigating violations such as Mail Fraud, Wire Fraud, Fraud Against the Government, and Money Laundering. I have participated in numerous financial fraud investigations, arrests, and searches. I have participated in the execution of numerous search warrants for documents, records, and proceeds from illegal activities and have participated in the subsequent investigation and analysis of evidence seized pursuant to those warrants. I have also had experience interviewing defendants, witnesses, informants, and other persons who have had personal knowledge of the amassing, spending, converting, and concealing of proceeds gained from illegal activity.

2.     This affidavit is submitted in support of a criminal complaint alleging that JESSE WELLS HAUG has committed wire fraud, in violation of Title 18, United States Code, Section 1343.

3.     Unless otherwise noted, the information contained in this affidavit is based on my personal participation in the investigation of the described offenses, and on my experience and background. This investigation is being worked jointly with Special Agents from the Minnesota Department of Commerce Fraud Bureau, Special Agents from the United States Internal Revenue Service, Criminal Investigation Division, and other Special Agents and Forensic Accountants of the FBI; and this affidavit contains information which I obtained from one or more of those Agents. Since this affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging HAUG with mail fraud, it does not contain every fact known to me concerning this investigation.

## BACKGROUND OF THE INVESTIGATION

4.     As set forth below, this investigation has revealed that from approximately July 2013, and continuing through at least August 2016, HAUG engaged in a scheme to defraud Victim #1 and Victim #2.

5.     As described in the following paragraphs, HAUG solicited investment funds from Victim #1 and made representations to Victim #1 that he would use Victim #1's funds, a total of $780,000, for the purpose of purchasing and renovating a total of six properties. HAUG, however, took Victim #1's money and used it for his own purposes and those of his wife, such as to make payments on their personal credit cards and to cover previously written checks on their accounts. HAUG created several Limited Liability Companies (LLCs) to further the scheme to defraud and make it appear as if Victim #1's funds were being used for the purchase and renovation of the six properties.

2

6.     As further described below, in furtherance of his scheme to defraud, HAUG sent emails to Victim #1 using the email address jesse@710services.com. This email address is managed by Google. Victim #1 received the emails in his Gmail account. Based on my training and experience, Google does not have any data centers in Minnesota or Arizona. Therefore, emails sent by HAUG and received by Victim #1 in either Minnesota or Arizona in his Gmail account traveled in interstate commerce.

7.     As further described below, HAUG formed two businesses with Victim #2, MJ Homes, LLC (MJ Homes) and Next Level Sports, LLC (Next Level). The purpose of MJ Homes was to purchase, rehabilitate, and sell homes. The purpose of Next Level was to provide youth hockey training. Victim #2 provided funds to HAUG based on HAUG's representations that he was using the money to further their business interests. HAUG provided financial statements to Victim #2 in which he claimed to have purchased and sold properties, generating profits for HAUG and Victim #2. HAUG, however, used Victim #2's funds for his own and his wife's personal use. Victim #2 sued HAUG and HAUG's company, 7-10 Services LLC (7-10 Services), in Dakota County, Minnesota, alleging fraud among other counts. HAUG did not appear for trial, and Victim #2 was awarded a judgment in the amount of $552,010 on his fraud claim in May 2016.

## HAUG BUSINESSES

8.     According to the Office of the Minnesota Secretary of State business filings, the following businesses are registered in the names of HAUG or his wife and/or at their business, residence, and/or former residence addresses:

3

a. **7-10 Services LLC**: Jesse HAUG was the registered agent and 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota 55124 was the registered office address (terminated on 8/30/2016).

b. **7-10 Construction Services LLC**: HAUG's wife is the registered agent and one of HAUG's current residences, is the registered office address (filed on 6/14/2016).

c. **7-10 Exterior Services LLC.**: Jesse Wells HAUG was the registered agent and 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota 55124 was the registered office address (terminated on 10/20/2016).

d. **Stable Homes LLC**: HAUG's wife was the registered agent and manager, and one of HAUG's residences in Rosemount, Minnesota was the registered office address (terminated on 10/20/2016).

e. **Stable Companies LLC**: HAUG's wife is the registered agent and one of HAUG's residences in Rosemount, Minnesota is the registered office address (as of 4/13/2016).

f. **Global Title Services LLC**: Jesse Wells HAUG is the registered agent and 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota 55124 is the registered office address (filed on 12/8/2016).

g. **MJ Homes LLC**: Jesse Wells HAUG was the manager and 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota was listed as the manager's address (terminated on 12/24/2015).

h. **Next Level Sports LLC**: There was no registered agent, but the registered office address was 5708 Upper 147th Avenue West, Suite 104, Apple Valley, Minnesota 55124 (terminated on 3/15/2016).

9.     According to the Office of the Minnesota Secretary of State, Jesse Wells HAUG is an active notary, with an original commission of May 8, 2012, expiring on January 31, 2017.

10.    According to the Minnesota Department of Labor and Industry, 7-10 Services LLC, 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota 55124, held a residential building contractor license number BC690892, that is currently listed as revoked.

## SCHEME TO DEFRAUD VICTIM #1

11.     Victim #1 met Jesse HAUG through a mutual friend. HAUG told Victim #1 that he has been in the construction industry since he was 18 years old and has been flipping dilapidated homes in North Minneapolis. Victim #1 and HAUG agreed to work together to purchase, renovate and flip homes. Victim #1 and HAUG agreed that Victim #1 would purchase the homes and fund the renovations, while HAUG would complete the renovations and sell the homes. HAUG told Victim #1 that his wife was a realtor. HAUG introduced Victim #1 to two of his employees, Employee #1 and Employee #2.

12.     HAUG provided Victim #1 with a business card and brochure for his company, 7-10 Services, LLC. Victim #1 met with HAUG at his office at 5708 Upper 147th Street West, Suite 104, Apple Valley, Minnesota and at HAUG's residence in Rosemount, Minnesota.

13.     As described below, from approximately September 2015 until June 2016, Victim #1 provided $780,000 to HAUG to purchase six homes to be renovated and sold.

### 1049 Edgerton Street, St. Paul, Minnesota

14.     In approximately September 2015, HAUG told Victim #1 about a home on 1049 Edgerton Street, St. Paul, Minnesota, and provided a copy of a real estate listing for the property. Victim #1 gave HAUG a check dated September 5, 2015, payable to Employee #1, the purported seller of the home, in the amount of $70,000. The same day, Victim #1 gave HAUG another check payable to HAUG's company, 7-10 Services, in the amount of $5,000 for repairs. HAUG gave Victim #1 a copy of a Quitclaim Deed dated September 4, 2015, in which Employee #1 conveyed the property to Victim #1 for $70,000.

5

The Quitclaim Deed was purportedly signed by Employee #1, and Employee #1's signature was notarized by Jesse HAUG. It is currently unknown whether Victim #1 knew that Employee #1 was HAUG's employee at the time of the purported purchase.

15.     HAUG gave Victim #1 a copy of a residential lease agreement dated January 8, 2015, leasing 1049 Edgerton Street, St. Paul, Minnesota to a tenant. 7-10 Services LLC (Property Manager) was listed as the owner. The lease agreement contained a signature for the owner that appears to be that of Employee #2. HAUG told Victim #1 that there was already a renter in place and that the renter agreed to stay after the renovations.

16.     On September 8, 2015, Victim #1's check payable to Employee #1 in the amount of $70,000 was deposited into HAUG's 7-10 Exterior Services LLC US Bank account number x4665. On the day these funds were deposited, the account's beginning balance was -$17,937.66.

17.     A Certificate of Title for 1049 Edgerton Street, St. Paul, Minnesota provided by the Ramsey County Registrar of Titles certifies that Employee #1 was the current owner of 1049 Edgerton Street, Saint Paul, Minnesota, 55101, as of September 2016.

18.     On October 12, 2016, Employee #1 filed a complaint with the Farmington Police Department in which Employee #1 stated that HAUG, who was a friend of his, fraudulently tried to sell Employee #1's home at 1049 Edgerton Street, St. Paul, Minnesota, and that HAUG forged Employee #1's signature on the documents.

19.     On November 17, 2016, Employee #1 filed another complaint with the Farmington Police Department in which Employee #1 stated that HAUG obtained a line of credit using his name and social security number as a co-signer without his permission.

Employee #1 obtained a copy of the credit application from a debt collector trying to collect on HAUG's debt.

### 7862 Glenda Court, Apple Valley

20.     On October 6, 2015, HAUG sent an email from jesse@710services.com to Victim #1 stating, "I have a lead on a town home In AV that is non MLS, good looking deal just needs minor rehab, renter in place that I know well and he tipped me off that the owner wants to sell quick..." HAUG sent an additional email from jesse@710services.com to Victim #1 providing the address of 7862 Glenda Court, Apple Valley. Later that day, HAUG sent an email from jesse@710services.com to Victim #1 stating, "AV townhome. This is a done deal! I have all the necessary docs and quit claim deed at my office. I wrote a check for $90,000 to lock it up and all docs are ready to transfer .... I am planning on having guys start tomorrow at the house! We will turn and burn this one and keep moving forward..."

21.     HAUG told Victim #1 that one of HAUG's employees was renting the property and that the owners of the property wanted to liquidate their property holdings.

22.     HAUG provided Victim #1 with a copy of check #1030 from his 7-10 Exterior Services LLC US Bank account number x4665, dated October 6, 2015, payable to 7862 Glenda LLC in the amount of $90,000 with the notation, "7862 Glenda Ct AV purchase" on the check. A review of HAUG's 7-10 Exterior Services LLC US Bank account number x4665 shows that check #1030 was never presented to US Bank for payment, and the account has since been closed.

7

23.     Victim #1 gave HAUG a check dated October 7, 2015, payable to 7-10 Services LLC in the amount of $90,000. This check was deposited into 7-10 Exterior Services LLC US Bank account number x4665 on October 7, 2015. On October 8, 2015, HAUG wrote a $23,380.93 check to a roof supplier and a $35,000 check to cover a previous check dated September 28, 2015 to MNCLS, believed to be Minnesota Construction Legal Services, the law firm that initially represented HAUG in the lawsuit filed by Victim #2. The $35,000 check had been returned by US Bank for Not Sufficient Funds on October 5, 2015. On October 13, 2015 and October 14, 2015, over $8,000 was withdrawn from HAUG's 7-10 Exterior Services LLC US Bank account x4665 as follows: $500 withdrawal at the Lindbergh terminal and the Minneapolis airport, $590 to Delta Airlines, $777 to hotels.com NV, another $932 to Delta Airlines, and $5,300 to the Bellagio Hotel and Casino.

24.     HAUG gave Victim #1 a purchase agreement dated October 6, 2015, which was purportedly signed by seller MA, listing the purchase price for 7862 Glenda Court, Apple Valley, as $90,000. HAUG also gave Victim #1 a quitclaim deed dated October 6, 2015, in which the Grantor, MA, President of 7862 Glenda LLC, granted the property to Victim #1. MA's signature was notarized by HAUG.

25.     Victim #1 stated that HAUG showed Victim #1 the property before the alleged purchase and again after renovation work had been done on the property.

26.     On September 13, 2016, MA filed a police report with the City of Eagan Police Department stating that Jesse HAUG forged a quitclaim deed and attempted to fraudulently sell his property at 7862 Glenda Court, Apple Valley, Minnesota, for $90,000. MA stated that HAUG used to be a building contractor for MA's investment company. MA provided a copy

of the quitclaim deed referenced in the previous paragraph and stated that he did not sign the quitclaim deed.

### 14214 Davenport Path, Rosemount, Minnesota

27.     Victim #1 gave HAUG a check payable to 7-10 Services LLC in the amount of $75,000 dated October 25, 2015, for the purchase of 14214 Davenport Path, Rosemount, Minnesota.

28.     On October 29, 2015, HAUG deposited Victim #1's check into his 7-10 Exterior Services LLC US Bank account number x4665. HAUG wrote a check from his 7-10 Exterior Services LLC US Bank account number x4665 dated October 30, 2015, to a remodeling company in the amount $11,000. In addition, On October 30, 2015, a previously deposited check from an account in the name of HAUG at Cities Credit Union was returned for Not Sufficient Funds, resulting in a debit to the 7-10 Services US Bank account number x4665 in the amount of $20,000.

29.     On October 29, 2015, Victim #1 responded to the following email from Jesse HAUG at jesse@710services.com, "Just a few things today, we are 100% a go on the Rosemount property I am just waiting for the title company to give me the green light and I can go in to close....Hope to close Friday!..."

30.     HAUG gave Victim #1 a copy of a quitclaim deed dated October 30, 2015, in which the Grantor, Bank of New York Mellon, Mark Johnson, purportedly granted the property to Victim #1 for $150,000. Mark Johnson's signature was notarized by Jesse HAUG on October 30, 2015.

31.     A review of the Dakota County online property tax records shows that 14214 Davenport Path, Rosemount, Minnesota, 55068 is owned by ZB (since 2004), a person not affiliated with Victim #1.

### 11205 Radisson Drive, Burnsville, Minnesota

32.     On November 5, 2015, Victim #1 responded to an email from Jesse HAUG using jesse@710services.com, in which HAUG stated, "Tomorrow the St. Paul house is scheduled to close which will return $100k, I have been looking at properties all week and reaching out to my contact to lock us another deal and I think I have one that is right up our alley. The address is 11205 Radisson Drive, Burnsville MN 55337. It is a fannie mae property that a colleague of mine has locked up for $135k…If it sounds good with you we could use the $100k from St. Paul and I can cover the rest? ... Also Rosemount is locked down and I have the Quit Claim Deed all filled out and is at the title company! We are just waiting for closing on AV townhome, shouldn't be long."

33.     Victim #1 did not provide any additional funds for the purchase of the Burnsville property, as HAUG represented that he would use proceeds from the sale of the Edgerton property to purchase the Burnsville property

34.     HAUG provided Victim #1 with a Quitclaim Deed signed by "Richard Nelson, Asset Manager, on behalf of Federal Natl Mtg Assn" and notarized by Jesse HAUG.

35.     On September 14, 2016, an attorney representing Fannie Mae provided an email stating that the deed described above, purportedly signed by Richard Nelson, was fraudulent.

### 7011 Valley View Road, Edina, Minnesota

36.     In approximately September or October 2015, Victim #1 saw that 7011 Valley View Road, Edina, Minnesota, was for sale. Victim #1 told HAUG about the property. HAUG told Victim #1 that he put a bid on the property but it was not successful. In December 2015, HAUG told Victim #1 that the previous sale on this property fell through and asked if Victim #1 wanted to bid again.

37.     On December 7, 2015, Victim #1 sent an email to Jesse HAUG at jesse@710services.com in response to the following email from HAUG, "Our offer was $295k on valley view and it's ours if we want it!..."

38.     On December 8, 2015, Victim #1 received an email from HAUG's wife at secure@authentisign.com, inviting Victim #1 to participate as a signing party in an Authentisign E-signature document signing for 7011 Valley View Road. The Reply to address was HAUG's wife's email address. On December 8, 2015, Victim #1 received a confirmation that the document had been signed by all parties regarding 7011 Valley View Road.

39.     On December 9, 2015, Victim #1 received an email from Jesse HAUG using jesse@710services.com, forwarding wiring instructions. The attachment to the email contained wire instruction on the letterhead of Global Title Services, 1895 Plaza Drive Suite 100, Eagan, Minnesota 55122, and directed the wire to go to US Bank, Beneficiary Account Name Global Title Services LLC, account number x7056. The reference was 7011 Valley View Rd, Edina, MN 55439.

40.     On December 9, 2015, Victim #1 wired $295,000 to Global Title Services LLC's US Bank account number x7056, an account that Haug opened that same day. At the

time the account received the wire, the account beginning balance was $100. On December 10, 2015, $50,000 was withdrawn and deposited into Jesse Wells HAUG's US Bank account number x2150 and $25,000 was withdrawn and deposited into Jesse Wells HAUG's US Bank account number x9102, both of which were also opened on December 9, 2015 by HAUG.

41.     Between December 10, 2015, and December 15, 2015, $195,100 was withdrawn from HAUG's Global Title Services LLC US Bank account number x7056 and deposited or transferred to HAUG's 7-10 Exterior Services LLC US Bank account number X4665.

42.     HAUG gave Victim #1 a quitclaim deed dated December 11, 2015, in which the Grantor, DM conveyed the property to Victim #1. DM's signature was notarized by Jesse Haug.

43.     On January 26, 2016, Employee #2, using email address Amanda@710services.com sent an email to Jesse HAUG at jesse@710services.com with layout options and notes regarding the property. HAUG forwarded the email to Victim #1 explaining that the attached are revisions to the floor plans based on Victim #1's notes.

44.     On February 15, 2016, Jesse HAUG sent an email from jesse@710services.com to Victim #1 stating the following, "…Rosemount is all set to close should be done within days, Burnsville we have an offer accepted just need to go through the steps, inspection, title work etc. Edina is slowly but surely moving along…regulatory process with the city is always fun. Think about what you would like to do as these closings come closer as we can re invest or cash some or all out, I am ready to buy another if you are…"

45.    Sometime in February, 2016, Victim #1 met Jesse HAUG and BK, a person that HAUG represented was interested in buying the property at 7011 Valley View Road in Edina, Minnesota. The windows were sealed up with plastic, and HAUG told Victim #1 that the seller was remediating mold on the property. Former Subcontractor #1 told law enforcement that BK was a friend of HAUG's, and may currently live in HAUG's former residence. A search of Clear/Thomson Reuters shows that BK used the HAUGs' former residence, 5162 142nd Path West, Apple Valley, Minnesota, as recently as August 2016.

46.    On February 26, 2016, Jesse HAUG sent an email from jesse@710services.com to Victim #1 stating the following, "…While I was waiting for the city of Edina building permits and plan review to approve our plans I had been working diligently over the past weeks on getting valley view pre sold as I had told you I would when spoke almost a month ago. I have a very qualified buyer who has made a very very good offer based off of the sworn construction statement and plans that I showed him."

47.    On May 3, 2016, Victim #1 sent an email to Jesse HAUG at jesse@710services.com responding to an email from HAUG in which HAUG stated the following, "Regarding the update on Valleyview here is where we are at, some lenders and brokers have 30, 60, 90 and 180 day rules to restrict flippers from making large profits in a short period of time…essentially trying to police the free market…" In the email, HAUG continued to explain steps he had taken to protect all parties in the transaction and provided an approximate close date of June 15th. In addition, HAUG added that he heard back from two properties he offered for the previous week, including a property at 4553 152nd St. West, Apple Valley. HAUG stated the purchase price was $135,000, the rehab would be $25,000,

13

for a total investment of $160,000, and the potential sale would be $225-250,000. HAUG told Victim #1 that BK was going to buy the Valley View property in Edina "as is" without renovations, but due to lending rules, they had to delay the sale.

48.     A Certificate of Title issued by the Registrar of Titles for Hennepin County verified through August 25, 2016, shows that the Valley View property in Edina is currently owned by DM, the same person who purportedly signed the quitclaim deed for the Valley View property on December 11, 2015. Hennepin County property tax records online also show the current owner of the property as DM, the same person who purportedly signed the quitclaim deed on December 11, 2015.

### 1981 James Avenue, St. Paul, Minnesota

49.     On March 18, 2016, Victim #1 responded to an email from Jesse HAUG using email address jesse@710services.com in which HAUG told Victim #1, "I have a property for us to check into...They are talking around the $250K price point...The address is 1981 James Ave St. Paul." Victim #1 asked HAUG if they had any funds coming available from closing on current properties. HAUG responded later that day by email using jesse@710services.com, stating that they had funds from Rosemount at the title company if they liked James Avenue.

50.     On March 21, 2016, HAUG sent an email to Victim #1 from jesse@710services.com setting up a 10:00 am meeting at the 1981 James Avenue property for the next day.

51.     On March 28, 2016, Jesse HAUG sent an email from jesse@710services.com to Victim #1 at his Gmail account stating the following, "...I am attaching the most up to date

breakdown of financials...and I am going to have the purchase agreement for 1981 James Avenue forwarded over to you. Let me know if you have any questions..." HAUG attached a one-page Investment Breakdown showing Victim #1's investments of $535,000 for the following properties: Edgerton Street, Glenda Court, Davenport Path, and Valley View. The document also showed that Victim #1 had proceeds from closed transactions for Edgerton, Glenda, and Rosemount in the amount of $69,465. The document further showed that Victim #1 had projected proceeds from future closings for Burnsville, James Ave in St. Paul, and Valley View in Edina totaling $173,075. Finally, the document showed that Victim #1's estimated return on investment over 12 months to be 45%. This email forms the basis for the count of wire fraud with which HAUG is charged in the attached Complaint.

52.     Victim #1 did not provide any additional funds for the purchase of the James Avenue property. HAUG represented to Victim #1 that he would use the proceeds from the sale of the Rosemount property to purchase this property.

53.     HAUG gave Victim #1 a purchase agreement dated March 28, 2016, in which the seller agreed to sell 1981 James Avenue, St. Paul, Minnesota, to Victim #1 for $250,000. HAUG showed the property to Victim #1 before the purported purchase and after renovation work had been done on the house.

### 4553 152nd Street West, Apple Valley, Minnesota

54.     Victim #1 received a copy of an appointment for a showing on April 28, 2016, for 4553 152nd Street W. Apple Valley, Minnesota. The buyer is listed as Jesse HAUG. Victim #1 believes that on the day that he went to see this property, he also went to HAUG's residence in Rosemount.

55. HAUG provided Victim #1 with a copy of a purchase agreement on Global Real Estate Services letterhead, dated April 28, 2016, in which Stable Homes agreed to purchase 4553 152nd Street W., Apple Valley, MN for $135,000. Jesse HAUG signed on behalf of the buyer, Stable Homes. HAUG's wife is listed as the buyer's agent.

56. On May 9, 2016, Victim #1 sent an email to Jesse HAUG at jesse@710services.com asking when HAUG could stop by so Victim #1 could give him a check. The email was in response to an earlier email from HAUG in which he told Victim #1 that he, "spoke with the title company and we are clear to close on Apple valley on weds…"

57. Victim #1 gave HAUG a check dated May 10, 2016 in the amount of $160,000 for the purchase of 4553 152nd Street W., Apple Valley. The check was deposited into the US Bank account of Stable Homes, LLC, account number x5770. Stable Homes LLC US Bank account number x5770 was opened in the name of HAUG's wife on April 7, 2016. On the day that Victim #1's check was deposited, May 10, 2016, $10,000 was transferred to HAUG's wife's US Bank account x9293. On May 11, 2016, electronic payments were made in the amounts of $10,165.59 to Jesse HAUG's Capital One account and $12,545.57 to Chase.

58. HAUG gave Victim #1 a copy of a quitclaim deed for the property dated May 11, 2016, purportedly signed by Bank of New York, Thomas Hanson, Vice President, and notarized by Employee #2 on May 11, 2016.

59. A review of the Dakota County online property information shows the current owner, since 2003, to be a KB, an individual with no known connection to Victim #1.

## 15705 Sussex Drive, Minnetonka, Minnesota

60.    On June 5, 2016, HAUG, using email address jesse@710services.com sent an email to Victim #1 setting up a time to meet at 15705 Sussex Drive, Minnetonka, Minnesota. Victim #1 had previously found the listing for this property and told HAUG about it.

61.    On June 10, 2016, HAUG, using email address jesse@710services.com, told Victim #1 that he just got word from the agent on Sussex that they accepted the offer at $85,000. HAUG also told Victim #1 that he would cover the rehab cost of $40,000.

62.    On June 14, 2016, HAUG, using email address jesse@710services.com, gave Victim #1 wiring instructions for 15705 Sussex Drive and said that they were clear to close after funds were wired. The email included an attachment directing Victim #1 to wire funds to Global Title Services' account at US Bank, account number x7056. On June 14, 2016, Victim #1 wired $85,000 to Global Title Services' US Bank account number x7056.

63.    As stated previously, Jesse Wells HAUG DBA Global Title Services' US Bank account number x7056 was opened on December 9, 2015 by Jesse HAUG.  On the day Victim #1 wired $85,000 to the account, June 14, 2016, the beginning balance was -$403.  On June 15, 2016, $13,500 was withdrawn and deposited in HAUG's wife's US Bank account number x9293 and two electronic payments totaling $13,137 were made to Jesse HAUG's and HAUG's wife's Capital One accounts.  On June 16, 2016, an electronic payment in the amount $14,137 was made to Chase.

64.    HAUG gave Victim #1 a quitclaim deed dated June 29, 2016, in which Federal National Mortgage conveyed the property to Victim #1. The quitclaim deed was purportedly

signed by Michael Anderson, Vice President of Federal National Mortgage, and the signature was notarized by Employee #2.

65.     In early August, 2016, Victim #1 saw that the Sussex Drive property was still listed for sale on an auction website. Victim #1 notified Jesse HAUG by sending an email to jesse@710services.com. HAUG responded on August 4, 2016, stating that it was still showing active on auction.com and that he emailed the listing agent. HAUG included a purported email to the listing agent regarding the property still being listed on MLS.

66.     Shortly thereafter, Victim #1 drove by the property and saw the for sale sign showing the property was still for sale. Victim #1 contacted the listing agent directly and learned that the property was never sold to Victim #1 and that it was still actively listed on MLS. Victim #1 also contacted Global Title and spoke with the contact name from the previously described wire instructions. Victim #1 learned that Global Title had no records for the sale of the property and that it did not have a bank account at US Bank.

67.     According to Hennepin County property records on line, 15705 Sussex Drive, Minnetonka, Minnesota, is currently owned by Federal National Mortgage Association.

68.     Victim #1 has attempted to contact HAUG several times by text message and email since August 2016, with no response back from HAUG.

**SCHEME TO DEFRAUD VICTIM #2**

69.     Victim #2 met Jesse HAUG through their mutual interest in playing hockey. In July 2015, Victim #2 filed a police report with the Apple Valley, Minnesota, Police Department. Victim #2 described several transactions with Jesse HAUG in which Victim #2 gave HAUG approximately $441,000 from July 2013, through November 2014, for the

purpose of furthering the two businesses that HAUG and Victim #2 formed called MJ Homes LLC and Next Level Sports LLC. In October 2015, an attorney for Victim #2 filed a lawsuit against HAUG and 7-10 Services alleging fraud in an amount in excess of $500,000.

      a.      On July 19, 2013, Victim #2 gave a $45,000 check to HAUG, payable to 7-10 Services, for the purpose of purchasing and rehabilitating a home. HAUG signed a promissory note for the loan. HAUG deposited the check into his 7-10 Services LLC Wells Fargo Bank account number x8412. On July 22, 2013, HAUG made $39,000 in electronic payments from his 7-10 Services LLC Wells Fargo bank account number x8412 to American Express and Capital One. HAUG never repaid any money on the loan.

      b.      On August 16, 2013, Victim #2 gave a $50,000 check to HAUG payable to 7-10 Services, listing 1049 Edgerton Street in the memo line, to purchase, rehabilitate, and sell the house. HAUG signed a promissory note for the loan. This is the same home that HAUG later purported to purchase from Employee #1 with Victim #1's funds in September 2015. HAUG deposited the check into his 7-10 Services US Bank account number x7505. On August 19, 2013, HAUG made an electronic payment of $40,644 to American Express from his 7-10 Services US Bank account number x7505. HAUG never repaid any money on the loan.

      c.      In September 26, 2013, Victim #2 withdrew $60,000 from his account and deposited the money into HAUG's 7-10 Services' US Bank account number x7505. HAUG told Victim #2 that the money would be used to assist with a rehabilitation of a house. On September 27, 2013, HAUG made an electronic payment from his 7-10 Services US Bank account number x7505 in the amount of $35,705 to American Express.

d.      On January 14, 2014, Victim #2 gave a $26,000 check to HAUG payable to 7-10 Services for the purchase of a cabin that HAUG owned in Clayton, Wisconsin. HAUG and Victim #2 agreed the purchase price would be $80,000, and HAUG told Victim #2 he would use the profits from the sale of previous homes rehabilitated by MJ Homes to cover the remaining amount of the purchase price for the cabin. HAUG gave Victim #2 a quitclaim deed dated January 15, 2014, for the property, signed by HAUG on January 28, 2014. HAUG deposited the $26,000 check into his 7-10 Services US Bank account number x7505. On January 15, 2014, the beginning balance in HAUG's 7-10 Services US Bank account number x7505 was $-5,504. On January 16, 2014, HAUG wrote a check in the amount of $5,000 and deposited the check into HAUG's Cities Credit Union account number x0410. Victim #2 later received a letter report of title for the Clayton, Wisconsin cabin, dated April 20, 2015, that showed the property was mortgaged in the amount of $176,000, and HAUG was listed as the owner of record.

e.      On January 23, 2014, Victim #2 gave a $40,000 check to HAUG payable to 7-10 Services for the purpose of purchasing and rehabilitating larger homes. HAUG deposited the check into his 7-10 Services US Bank account number x7505. The account balance before the deposit was $-1,630. Between January 24, and January 27, 2014, HAUG made withdrawals totaling $4,600 and wrote a $9,000 check payable to HAUG, both from his 7-10 Services US Bank account number x7505. HAUG deposited the $9,000 check into his Cities Credit Union account number x0410.

f.      HAUG gave Victim #2 a one-page statement on 7-10 Services letterhead dated July 1, 2014 showing a summary of Victim #2's investments. The summary

20

contained returns on investments totaling $93,408 as well as references to projects in progress in Brooklyn Park and Richfield.

g.      On July 2, 2014, Victim #2 gave a $125,000 check to HAUG payable to 7-10 Services to purchase a six-plex at 2126 44th Avenue North, Minneapolis, Minnesota. HAUG represented that he would also provide $125,000 for the purchase of the property. HAUG gave Victim #2 a quitclaim deed showing that MJ Homes owned the property. HAUG gave Victim #2 copies of lease agreements showing that all six units to the property were rented out. HAUG also gave Victim #2 a Parcel Data for Taxes payable for 2014 which showed the owner of the property to be MJ Homes. HAUG deposited the check into his 7-10 Services US Bank account number x7505. Between July 2, 2014 and July 7, 2014, HAUG paid approximately $20,000 to construction contractors and home improvement stores, over $10,000 to credit card companies and purchased a $50,000 cashier's check for an unknown purpose. Victim #2 later learned that the property was never owned by MJ Homes.

h.      On November 26, 2014, Victim #2 gave a $50,000 check to HAUG payable to Next Level Sports, a company that Victim #2 and HAUG formed for the purpose of providing youth hockey training.  HAUG deposited the check into a Next Level Sports US Bank account number x2565 which HAUG opened on November 19, 2014. On December 1, 2014, $41,000 was withdrawn from the Next Level Sports US Bank account number x2565 by cashier's check, and deposited into HAUG's 7-10 Services Wells Fargo account number x2219.

70.     Victim #2 asked HAUG for a cash withdrawal in April 2015. HAUG sent Victim #2 emails and texts as if he was trying to wire the money but the wire never happened. HAUG later sent Victim #2 a text stating that he gambled away all of MP's money.

71.     As stated previously, Victim #2 filed a lawsuit against HAUG alleging fraud, among other counts, and asking for damages in excess of $500,000. The lawsuit summarized several transactions and the representations made by HAUG to Victim #2. As part of the discovery process, HAUG and Employee #2 were deposed on September 4, 2015, the day before Victim #1 provided his first check to HAUG for the purchase of 1049 Edgerton Street. HAUG initially was represented by Minnesota Construction Legal Services in the lawsuit, but neither HAUG nor counsel for HAUG appeared for trial set for April 28, 2016. In May 2016, The District Court in the First Judicial District in Minnesota (Dakota County) issued Findings of Fact, Conclusions of Law, Order for Judgment and Judgment awarding Victim #2 damages in the amount of $552,010. The court specifically found that Jesse HAUG fraudulently induced Victim #2 into providing HAUG with large sums of money for the alleged purchase and subsequent flip of properties for a profit which never occurred, and that HAUG provided fraudulent documentation to Victim #2 to continue to induce Victim #2 to provide monies.

## SEARCH WARRANTS AT HAUG'S RESIDENCES

72.     On December 22, 2016 law enforcement executed search warrants at HAUG's two current residences in Rosemount, Minnesota. The first residence was equipped with interior and exterior security cameras. At the first residence, while searching for items to be seized pursuant to the search warrant, law enforcement saw two long guns, eight handguns,

including one handgun in a vehicle in the garage, and body armor. At the second residence, while searching for items to be seized pursuant to the search warrant, law enforcement saw drug paraphernalia, a small amount of suspected marijuana, and suspected marijuana gum, candy, and liquid. as well as suspected ecstasy tablets. HAUG was arrested on probable cause for theft by swindle over $35,000 and is currently in state custody at Dakota County Jail.

## CONCLUSION

73.     Based on the paragraphs above, there is probable cause to believe that HAUG engaged in a scheme to defraud Victim #1 and Victim #2 by soliciting money for the purpose of purchasing, rehabilitating and selling and/or renting out homes. when in fact, HAUG intended to use and used the money for their own purposes. There is also probable cause to believe that in furtherance of the scheme to defraud, HAUG transmitted email communications in interstate and foreign commerce.

74.     Based on my training, experience, knowledge, and the aforementioned facts of this investigation. there is probable cause to believe that Jesse Wells HAUG has committed wire fraud, in violation of Title 18, United States Code, Section 1343.

Further your Affiant sayeth not.

_____
Gina M. Palokangas, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me
this 22nd day of December, 2016

_____
The Honorable Janie S. Mayeron
UNITED STATES MAGISTRATE JUDGE

23